UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re

WAREHOUSE AT VAN BUREN STREET, INC.,

Debtor.

WAREHOUSE AT VAN BUREN STREET, INC.,

Plaintiff,

v.

COUNTY OF CLINTON and JOSEPH W. GIROUX
as the Clinton County Treasurer,

Defendants.

**BRIEF IN SUPPORT
OF MOTION**

Case No. 10-12719
Chapter 11

Adversary No. 11-90140

Hon. Robert E. Littlefield, Jr.,
Chief U.S. Bankruptcy Judge

Defendants Clinton County and Joseph W. Giroux submit the following Brief in support of their motion for summary judgment and dismissal, upon the grounds that the Debtor lacks standing to bring the present action and further, that the transfer following the default on the tax foreclosure proceeding did not constitute a "fraudulent conveyance" pursuant to 11 USC §548.

### STATEMENT OF FACTS

The Court is respectfully directed to the Stipulated Set of Facts and Attorney Affidavit for a complete statement of the facts. However, in particular, the parcel which is the subject of this action were taken by Clinton County in 2010 pursuant to a Real Property Tax Law foreclosure proceeding, as a result of the Debtor's/Debtor's failure to pay 2008 property taxes. (Ex "F") Following the unpaid 2008 tax bill, the Debtor was mailed numerous letters and notices warning of the delinquency and impending foreclosure. (Exs. B – E, J). All of those notices

{M0633741.1}

On October 9, 2010, the County mailed a Combined Notice and Petition of Foreclosure. The Debtor's President, Roger Jacobowski, received the Notice and signed a certified receipt to verify his receipt. (Ex. "G"). He has since unequivocally admitted that he did indeed receive actual notice of the foreclosure proceeding. (Ex. "H", paras. 7,8,9; Ex. "I", paras. 3, 7; Ex. "P", paras. 9, 14)

Despite actual receipt of the foreclosure Petition and the deadline to pay taxes, and awareness of the ramifications of a failure to do so, the Debtor did not oppose the Petition and did not pay the overdue taxes, but knowingly and intentionally defaulted on the Foreclosure Petition. Notably, on January 8, 2010, the actual deadline for redemption, Mr. Jacobowski personally called the County Treasurers' Office and was reminded of the amount due and deadline for payment. (Ex. "M"; Aff. of Giroux, para. 8). Nonetheless, he took no further action and failed to pay the taxes due.

As a result of the Debtor's default, on March 10, 2010 the Clinton County Court issued a default Order of foreclosure in favor of the County, transferring title in the Debtor's property to the County. (Ex. "K") A Deed was then filed formally transferring title to the County. (Ex. "L").

The Debtor does not dispute that Clinton County complied with all requirements of the RPTL in commencement and prosecution of the foreclosure action. There is also no dispute that the County provided the Debtor with actual notice of the foreclosure proceeding and its tax delinquency. There is also no dispute that the Debtor was actually received the Petition, was actually aware of the final redemption deadline, and was aware of the ramifications of its failure to pay its taxes. (Ex. "G"; Ex. "H", paras. 6, 7, 8, 9; Ex. "I", paras. 3, 7; Ex. "P", paras. 9, 14).

Finally, it is undisputed that despite such awareness, the Debtor took no steps to protect itself until well after expiration of the redemption deadline. (Ex. "H", paras. 12, 14.)

Although Real Property Tax Law §1131 provides a delinquent taxpayer with an additional month to vacate a default order of foreclosure, the Debtor did not avail itself of that opportunity. The Debtor took no further action until July 21, 2010, on the morning of the foreclosure auction, when it filed a Chapter 11 proceeding in this Court.

## LEGAL ARGUMENT

This Court should conclude that because the Debtor knowingly and intentionally defaulted on a valid tax foreclosure proceeding, that it the subject property is no longer part of the bankruptcy Estate and the Debtor now lacks standing to bring the present action. In the alternative, this Court should conclude that the transfer to the County was valid, that it was indeed transferred for its "reasonably equivalent value" and that the transfer does not run afoul of §548 of the Bankruptcy Code.

I. **BECAUSE THE DEBTOR KNOWINGLY AND INTENTIONALLY DEFAULTED ON THE TAX FORECLOSURE PROCEEDING, THE PROPERTY IS NO LONGER PART OF THE BANKRUPTY ESTATE, AND THE DEBTOR LACKS STANDING TO CHALLENGE THE TRANSFER IN BANKRUPTCY COURT.**

At the onset, there should be no reasonable dispute that this foreclosure was conducted pursuant to the strict requirements of the New York Real Property Tax Law. The proof reflects that the County repeatedly alerted the Debtor of its total delinquency, provided it with ample opportunity to pay its tax debt, and provided it with *actual notice* of the foreclosure. (Ex. A-G). The Debtor's owner, Roger Jacobowski, was aware of the final redemption deadline, and even called the Treasurers' Office on that same date and was reminded that a Judgment of Foreclosure was imminent. (Ex. "H", para. 13; Ex. "M", Aff. of Giroux, para. 8). The Debtor admits that it was aware of the foreclosure, but did not respond. (Ex. "H", paras. 6, 7, 8, 9, 12, 14; Ex. "I", paras. 3, 7; Ex. "P", paras. 9, 14). Despite that actual notice, and awareness that a failure to respond or to pay taxes would lead to foreclosure, the Debtor knowingly and intentionally defaulted on the tax foreclosure proceeding. As a result, title passed to the County. (Ex. "K"). The Debtor's default on the tax foreclosure proceeding stripped the Debtor of its title to the

subject property. As a result, the property is *not* part of the bankruptcy estate, and the Debtor cannot cure this default through the bankruptcy court.

The Debtor does not challenge the legitimacy of the foreclosure here. To the contrary, the Debtor has *admitted* receipt of the notice and awareness of the consequences of a failure to respond. (Ex. "H", paras. 6, 7, 8, 9, 12, 14; Ex. "I", paras. 3, 7; Ex. "P", paras. 9, 14). The Debtor's only prior criticism of the proceeding was a claim that it was not given an opportunity to participate in an installment payment plan, a claim which was ultimately discontinued. (Exs. N, P, Q).

The above history reflects that the Debtor failed to offer any defense to the tax foreclosure proceeding, despite ample and repeated opportunity to do so, and simply knowingly and intentionally defaulted on the tax foreclosure proceeding, and allowed the property to pass to the County.

Explicit within 11 USC §548 is a requirement that in order to allege a fraudulent transfer, the debtor must first hold an *interest* in the subject property. However, in the present matter, there can be no reasonable dispute that the debtor had lost all right, title, and interest in the subject property on March 10, 2010, the date that the Clinton County Court judge signed an Order granting the County's application for a default judgment of foreclosure and transferring title of the subject property from the Debtor to the County.

In particular, New York Real Property Tax Law §1131 provides,

> In the event of a failure to redeem or answer by any person having the right to redeem or answer, such person shall forever be barred and foreclosed of all right, title, and interest and equity of redemption in and to the parcel in which the person has an interest and a judgment in foreclosure may be taken by default as provided by §1136(3) of this title....

New York Real Property Tax Law §1136(3) further provides that when a taxpayer defaults and fails to answer the foreclosure petition,

> The court shall make a final judgment awarding to such tax district the possession of any parcel of real property described in the petition of foreclosure....In addition, such judgment shall contain a direction to the enforcing officer of the tax district to prepare, execute, and cause to be recorded a deed conveying to such tax district full and complete title to the parcel. Upon the execution of such a deed, the tax district shall be seized of an estate in fee simple absolute in such parcel and all persons...who may have had any right, title, interest, claim, lien, or equity in redemption in such parcel shall be barred and forever foreclosed of all such right....

Other courts in this jurisdiction, including the US Second Circuit Court of Appeals, have recently concluded that a debtor's pre-Petition default on a tax foreclosure action divests the Debtor of all right, title, and interest in the subject property, and removes the property from the bankruptcy Estate.

In the matter of *Wisotzke v. Ontario County*, 409 B.R. 20 (WDNY, 2009), aff'd 382 Fed. Appx. 99 (2nd Cir 2010), as in the present matter, the County commenced an *in rem* foreclosure proceeding to recover delinquent taxes and personally served the debtor with the foreclosure petition. Nonetheless, that debtor failed to respond, and the County was granted a default judgment of foreclosure. Shortly before the public auction was to take place, the debtor filed a bankruptcy petition and listed the property as an asset. The County then petitioned the Bankruptcy Court for an Order declaring that the property was not an asset of the debtor's estate pursuant to §541. Bankruptcy Court concluded that pursuant to RPTL 1131, the debtor's right to the property had expired, at the very latest, on the last day to reopen the default, and that as a result, his rights to the property had long since expired when he filed his Chapter 13 petition and that the property was therefore *not* part of the bankruptcy estate. That Decision was ultimately

upheld by the District Court for the Western District of New York and by the US Second Circuit Court of Appeals.

Similarly, in *Johnson v. County of Chautauqua*, 449 BR 7 (WDNY 2011), the County commenced a foreclosure proceeding to recover unpaid real property taxes. In that case, as here, the debtor actually signed a receipt acknowledging delivery of the foreclosure notice, but took no further action. As a result, the County obtained a default judgment of foreclosure. Several weeks later, the debtor filed a Chapter 13 Petition and also commenced an adversary proceeding to avoid the tax foreclosure as a fraudulent conveyance. As here, the debtor did not challenge the legitimacy of the foreclosure, but merely sought to avoid it through the bankruptcy court. The District Court denied the application and held that because the debtor had failed to show a meritorious defense in the state court action, the debtor must accept its consequences. The Court held that the default in the tax foreclosure proceeding has stripped the owner of title to the subject property, and that for purposes of the Bankruptcy Code, the "sale" had taken place upon entry of the default judgment. The Court concluded that because the debtor filed his bankruptcy *after* the entry of the default judgment, the property was not property of the estate, and the default could not later be cured through bankruptcy. See also: *In re Pickett*, 325 BR 779 (ED Mich., 2005), *In re Fisher*, 355 BR 20 (WD Mich., 2006).

In the present matter, as well as the above-cited cases, the debtor intelligently and intentionally defaulted on a Petition for Foreclosure, despite actual receipt of the foreclosure proceeding, and awareness of the ramifications of a default. As a result, a default judgment was granted, and title passed to the County on March 10, 2010 – four months before the Chapter 11 Petition was filed. For the same reasons set forth in *Wisotzke* and *Johnson*, this Court should

{M0633741.1}

conclude that title had already passed to the County prior to the filing, that the property is not part of the bankruptcy estate, and that as a result of the Debtor's voluntary default, it lacks standing to bring the present adversary proceeding.

Finally, the Court should consider the Debtor's own conduct. *Comis v. Bromka and County of Oneida*, 181 BR 145 (NDNY, 1994) suggests that an evaluation of the debtor's conduct is relevant in the analysis. Notably, in *Comis*, the Court noted, "the debtors had three years in which to protect their equity in the premises. Having failed to exercise their right of redemption over a period of three years, they should not now be allowed to exercise their right....under the auspices of the Bankruptcy Code." *Supra* at 150. Similarly, the foreclosure which is the subject of this action did not occur without warning. To the contrary, the foreclosure proceeding was commenced two years after taxes went unpaid. The Debtor was then provided with actual notice of the foreclosure and an additional three months to avoid foreclosure. Despite ample opportunity to redeem the premises and prevent foreclosure, the Debtor took no steps to protect itself.

In addition, nothing precluded the Debtor from filing for bankruptcy prior to expiration of the redemption deadline. Had it done so in a timely manner, the property could have been removed from the foreclosure proceeding to place the creditors on notice. The fact that the Debtor commenced filed for bankruptcy *on the very morning* of the foreclosure auction is certainly no coincidence. As noted by the court in *Martyak v. Tioga County*, 432 BR 25 (NDNY 2010),

{M0633741.1}

"It is evident that this bankruptcy filing was initiated solely to reverse the effects of forfeiture, the ultimate remedy afforded the county by the state legislature to address tax delinquencies. Particularly at this time in our economy, counties that are cash-strapped will be unable to provide the essential services expended and demanded of them if deprived of the regular receipts from their tax bases. As stated succinctly by the New York Court of Appeals:

> While to an owner who has not abandoned his or her property, learning of its foreclosure is distressing – particularly when the tax due constitutes a miniscule percentage of the market value of the property – the owner's interest must be balanced against the State's interest in collecting delinquent taxes, taking into account the status and conduct of the owner. *Kennedy v. Mossafa*, 100 NY2d 1 (2003).

Here, Debtor was provided with many opportunities to pay his delinquent taxes and keep the property. Despite the efforts and patience of the County and Treasurer, those amounts were not paid. The County then lawfully exercised its statutory right to foreclose. There is no basis for this court to reverse that result."

*Supra* at 41.

As set forth above, the County has complied with all aspects of the Real Property Tax Law and provided the Debtor with actual notice of the foreclosure proceeding. The Debtor was fully aware of the delinquency and foreclosure process, but knowingly and voluntarily defaulted, and took no action until he filed for bankruptcy on the very day of the foreclosure auction. As a result of the default, the Court should conclude that the subject property was not part of the

bankruptcy estate and that the Debtor lacks standing to bring the present action, and should therefore dismiss the Complaint in its entirety and award summary judgment to the defendants.

## II. THE TRANSFER OF THE PROPERTY TO THE COUNTY DID NOT CONSTITUTE A "FRAUDULENT CONVEYANCE" UNDER BANKRUPTCY CODE §548.

In the alternative, should the Court conclude that the Debtor does have standing, the Court should conclude that the property was indeed transferred for its "reasonably equivalent value", and that a "fraudulent transfer" did not occur.

Although §548 of the Bankruptcy Code questions a transfer for less than the "reasonably equivalent value" of the property, that provision does not have the same meaning in the context of foreclosure sales. Notably, in *BFP v. Resolution Trust Company*, 511 U.S. 531 (1994), the U.S. Supreme Court rejected a claim that a mortgage foreclosure sale constituted a fraudulent transfer, concluding that the fact that the property is taken in foreclosure necessarily redefines its value, and that the "reasonably equivalent value" of foreclosed property is *not* the "fair market value" of the property, but rather, is the price received for the property.

In *Comis v. Bromka and County of Oneida*, 181 BR 145 (NDNY, 1994), the Northern District reinforced that Decision and applied that ruling to real property tax law foreclosure sales. In *Comis*, as in the present case, the County commenced a foreclosure action to recover unpaid taxes; when the delinquent taxpayer failed to respond to the foreclosure proceeding or to pay their back taxes before the redemption deadline, the premises were automatically sold to the County. The Court declined to set aside the sale, concluding that because the foreclosure was conducted in accordance with state law, the price realized at the sale represented the reasonable equivalent value, and thus, it did not constitute a fraudulent transfer under §548.

{M0633741.1}

The Defendant acknowledges this Court's Decision in the matter of *In re: Harris*, Case. No. 01-10365, *In re: Herkimer Forest Products* (2005 WL 6237559). Should the Court proceed to this point and adopt those Decisions again, it is submitted that the transfer does not violate any "reasonably equivalent value" standard. As noted in full in the Attorney Affidavit, the amount of taxes due is not significantly less than the equity in the property, and should not arise to the level of an objectionable transfer for "less than a reasonably equivalent value" under §548.

III. **VACATING A FORECLOSURE UNDER BANKRUPTCY CODE §548 INAPPROPRIATELY IMPINGES UPON A COUNTY'S ABILITY TO CONDUCT TAX FORECLOSURE PROCEEDINGS.**

In addition, consideration should be given to the County's significant interest in foreclosing on properties for non-payment of taxes. In *BFP, supra*, the Supreme Court expressed a reluctance to interfere with otherwise valid foreclosures, noting that the Bankruptcy Code was not intended to displace traditional state regulation "with an interpretation that would profoundly affect the important state interest in the security and stability of title to real property." In particular, the Court noted that foreclosure of properties was an "essential state interest" and that power "inheres in the very nature of state government." The Court also rejected the debtor's arguments regarding the applicability of §548, noting that "the interpretation urged by petitioner would have a profound effect upon that interest: the title of every piece of realty....would be under a federally-created cloud." The same conclusion was reiterated by the Northern District in *Comis*, which held that "policy considerations favoring deference to mortgage foreclosure sales apply with as much force to tax foreclosure sales."

It is respectfully submitted that Congress did not intend that §548 should supersede state foreclosure proceedings in every circumstance particularly where, as here, the County took title to property after years of unpaid taxes and the debtor's complete disregard of a foreclosure proceeding.

As noted in *BFP*, "to displace traditional state regulation in such a manner, the federal statutory purpose must be clear and manifest; otherwise, the Bankruptcy Code will be construed to adopt, rather than displace, pre-existing state law." *Supra* at 544. It is respectfully submitted that the requested application of §548 would have such a significant effect upon the RPTL as to

{M0633741.1}

essentially invalidate §1136 of the Real Property Tax Law and to undermine the County's ability to foreclose on any property. Arguably, a municipality would always be reluctant to foreclosure upon a property if that foreclosure could be subject to scrutiny one year after the foreclosure, at a point in time when the property may have already been sold at public auction.

The court in *Fisher*, *supra*, aptly noted, "Although this may seem like a harsh results, there is a public policy issue at stake. First, it is in the best interest of everyone that property be available for purchase by a third party and returned to the tax rolls. Next, as stated by the Supreme Court, 'the general welfare of society is involved in the security of the titles to real estate.' If the position urged by the debtor were followed, the title to every piece of realty purchased at foreclosure would be under a federally-created cloud. No purchaser would be able to claim title free of liens, if the foreclosed-upon party could file bankruptcy and prevail in a fraudulent transfer suit, even when the taxing authority followed the required procedures...." *Supra* at 25.

In addition, to permit a debtor to annul a foreclosure merely by filing for bankruptcy would have the effect of extending the statutory redemption deadline beyond the date of Judgment, *and* potentially well past the auction itself. To allow the defaulting taxpayer to do so would provide them with a right that *paying* taxpayers do not have, and would put them in a *better* position because of their bankruptcy. It is respectfully submitted that Congress did not intend §548 to be used by delinquent taxpayers simply to grant them "another bite at the apple" and at the same time, to interfere with the municipalities of public interest and collecting on its taxes and regulating foreclosed properties. Considerations of public policy and deference to state

{M0633741.1}

14

tax regulation warrant dismissal of the present adversary proceeding and affirmance of the County's tax foreclosure proceeding.

## CONCLUSION

Accordingly, for the reasons set forth above, the Complaint should be dismissed with prejudice and in its entirety.

Respectfully Submitted,

DATED:    July 16, 2012

MAYNARD, O'CONNOR, SMITH, & CATALINOTTO

By _____
ROBERT A. RAUSCH
*Bar Roll No. 508063*
Attorneys for Defendants
6 Tower Place
Albany, New York 12203
(518) 465-3553

{M0633741.1}